UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAAKIMA SMITH

                    Plaintiff,

        -v-                                    1:19-CV-112

NYS OFFICE OF TEMPORARY AND
DISABILITY ASSISTANCE,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

SHAAKIMA SMITH
Plaintiff *pro se*
1455 Dorwaldt Blvd. #B9A7
Schenectady, NY 12308

NEW YORK STATE ATTORNEY            LYNN MARIE KNAPP, ESQ.
GENERAL – ALBANY
Attorneys for Defendant
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I.    INTRODUCTION

On January 28, 2019, plaintiff Shaakima Smith ("Smith" or "plaintiff"), filed a

complaint against her former employer, defendant New York State Office of

Temporary and Disability Assistance ("OTDA" or "defendant").  In that complaint,

plaintiff alleges that defendant violated Section 504 of the Rehabilitation Act by

failing to provide reasonable accommodations for her disability of migraines and, eventually, anxiety.

On September 23, 2020, Smith moved for summary judgment against OTDA under Federal Rule of Civil Procedure ("Rule") 56.  Once discovery closed, defendant opposed plaintiff's motion and cross-moved for summary judgment in its favor on February 1, 2021.  Both motions, having been fully briefed, will now be decided on the basis of the parties' submissions without oral argument.

## II.   <u>BACKGROUND</u>

OTDA is a New York state agency designed to "provide services and benefits to support low-income families and individuals."[1]  Dkt. No. 43-17 ("DSMF"), ¶ 1. One of defendant's sub-branches is the Office of Administrative Hearings ("OAH"). *Id.* ¶ 2.  Practically speaking, OAH processes appeals by applicants for, and recipients of, public benefits challenging a decision concerning their benefits.  *Id.*

Toward the end of 2012, OTDA hired Smith to serve as a Legal Affairs Specialist 1 ("LAS 1").  DSMF ¶ 13.  As an LAS 1, plaintiff was expected to process incoming phone calls, faxes, letters, and other means by which people would inquire about hearings concerning their benefits.  *See id.* ¶ 9.  Initially, she was assigned to the phone unit where, predictably, plaintiff would be expected to

---

[1] The facts are taken from defendant's statement of material facts where admitted by plaintiff, or from other record evidence.  Disputed facts are flagged and supported by citations to either the proponent's statement of material facts or to record evidence.

handle inquiries about hearings by telephone. *Id.* ¶ 15. In addition, OAH would periodically require her to lend a hand to other units as needed. *Id.* ¶ 16.

Smith worked in the phone unit for just over four years without any complaints about a disability impeding her from doing her job. DSMF ¶ 20. That changed on April 19, 2017, when plaintiff sent an email to OAH's director, Samuel Spitzberg ("Spitzberg"), requesting a reassignment to the correspondence unit. *Id.* ¶¶ 3, 21. Plaintiff informed Spitzberg that she was suffering from persistent migraines as a result of the phone unit's noisy environment, as well as excessive stress caused by "daily verbal abuse" from callers. *Id.* ¶ 22.

To mitigate the triggers for her migraines, Smith requested to be transferred to the correspondence unit. DSMF ¶ 29. Plaintiff believed that the quieter environment—not to mention no longer being yelled at by clients—would help with her ongoing migraines. *Id.* But plaintiff's request for accommodations concededly did not include eliminating all telephone responsibilities from her daily tasks. *Id.* ¶ 30.

Upon receiving Smith's email, Spitzberg forwarded it to Kerry Finley ("Finley"), OTDA's Affirmative Action Administrator, who was responsible for processing accommodation requests as part of OTDA's Office of Equal Opportunity and Diversity ("EOD"). DSMF ¶¶ 6-7, 23. In the process, Spitzberg raised a concern that every position at plaintiff's level involved at least some phone responsibilities. *Id.* ¶ 23. Finley forwarded plaintiff the necessary forms to process her request for reasonable accommodations. *Id.* ¶ 24. However, on the

same day she also told Spitzberg that she would like to talk about how they could accommodate plaintiff. *Id.* ¶ 25.

That same day, April 20, 2017, Spitzberg and Finley met to talk about the possible ways of handling Smith's accommodation request. DSMF ¶ 26. One of the possible solutions involved reassigning plaintiff to the scheduling unit. *Id.* Meanwhile, plaintiff promptly returned the completed forms to Finley and Spitzberg. *Id.* ¶ 28.

In May of 2017, Finley and Smith met to discuss plaintiff's accommodation request, and Finley offered to reassign plaintiff to the scheduling unit. *Id.* ¶¶ 31-32. Plaintiff formally accepted OTDA's offer on May 17, 2017. DSMF ¶ 34. For the next year, plaintiff worked in the scheduling unit without suffering from any migraines. *Id.* ¶ 40.

On April 4, 2018, Smith's supervisor in the scheduling unit, Fallon Shumway ("Shumway"), temporarily assigned her to process faxes regarding requests for withdrawals and adjournments of hearings. DSMF ¶ 42. While this task was usually reserved for LAS 1's in the intake unit, a backlog of requests had accumulated that OTDA needed more LAS 1's to help break up.[2] *Id.* ¶ 43.

The parties agree that processing faxes would have at least created a possibility that Smith would need to contact the public over the phone, although

---

[2] Nominally, plaintiff denies this fact. Dkt. 44, Plaintiff's Statement of Material Facts ("PSMF"), ¶ 43. But she does not point to any record evidence contradicting it, either. *Id.* In the absence of a specific citation to the record presenting a genuine dispute that it was not operationally necessary for other LAS 1's to be pulled in to help, the Court must accept it as true. Local Rule of the Northern District of New York 56.1(b).

plaintiff characterizes this less as a possibility than as a certainty.  DSMF ¶ 46;
PSMF ¶ 46.  The parties also agree that plaintiff was never told that: (1) she was
being sent back to the phone unit; (2) her scheduling unit responsibilities would be
permanently changed to involve more client contact; or (3) her requested
accommodations for her migraines were being revoked.  DSMF ¶ 45.

   What happened next is also not in dispute.  Apparently, Smith took defendant's
temporarily assigning her to process faxes as a revocation of her accommodations.
Pl. Dep. 155-56.  Consequently, plaintiff informed Shumway that she did not feel
well and went home.  DSMF ¶ 47.  On her way out the door, plaintiff stopped and
spoke to Jessica Vaughn Tolle ("Vaughn Tolle"), the Director of EOD, and gave her
version of events.  *Id.* ¶ 48.  Contemporaneously, Shumway sent an email
reporting her side of her conversation with plaintiff to her supervisors, Chelsea
Nash and Marc Isaacs ("Isaacs").  *Id.* ¶ 49.  Isaacs then forwarded the email to
Spitzberg, who apparently looked into the issue.  *Id.* ¶ 50.

   Smith would never return to work at OTDA.  DSMF ¶ 53.  Two months later,
in June of 2018, plaintiff requested that her reasonable accommodation be
"reinstated" so that she would no longer be expected to contact the general public.
DSMF ¶ 54.  On June 6, 2018, Finley sent plaintiff a new request for reasonable
accommodation form, which plaintiff completed and returned five days later.  *Id.*
¶¶ 55-56.  In response, on June 27, 2018, Finley sent plaintiff an email informing
her that her previous position in the scheduling unit was no longer available.
*Id.* ¶ 57.  However, EOD offered to find her a position in which her primary daily

job tasks would not include speaking to clients on the telephone. *Id.* Finley cautioned, however, that, because speaking with the general public was an essential job function, she may need to do so occasionally, as operationally necessary. *Id.*

Smith rejected EOD's June 27, 2018 offer of reasonable accommodation that same day. DSMF ¶ 58. Later that month, plaintiff met with Spitzberg and Vaughn Tolle to discuss what a reasonable accommodation for plaintiff would look like. *Id.* ¶ 59. Again, the parties dispute what was said at this meeting. According to OTDA, Spitzberg told plaintiff that there were no LAS 1 positions that would completely eliminate phone contact with the general public. *Id.* ¶ 60.

Smith's recollection differs. According to plaintiff, Spitzberg offered to allow plaintiff to process only those requests received via the Electronic Requests Retrieval System ("ERRS") and the Information Voice Retrieval System ("IVRS"). Pl. Dep. 184-85. However, plaintiff claims that Vaughn Tolle refused to agree to any accommodation that did not include at least occasional phone contact with the general public. *Id.*

In either case, on July 2, 2018, Finley sent Smith a revised reasonable accommodation offer, based on the accommodations that were discussed in the June 2018 meeting. DSMF ¶ 61. This offer included a position whose primary job tasks would include processing requests made through ERRS and IVR. *Id.* The primary tasks for this position would not include making phone contact with the general public, unless operationally necessary. *Id.* If plaintiff did need to speak to

6

the public by phone, she would be allowed to take an allotted break before and after making the calls, and she would be allowed to pass off loud or irate callers to a supervisor. *Id.*

Once again, Smith rejected OTDA's offer. DSMF ¶ 62. That same day, plaintiff informed Finley that she was medically restricted from having phone contact with the general public and requested to be placed on excused leave with pay. *Id.* ¶ 63. Subsequently, plaintiff provided treatment notes to support her restrictions from having phone contact with the public. *Id.* ¶ 64. Given this restriction, defendant determined that plaintiff was not able to perform an essential job function of speaking over the phone with the general public. *Id.* ¶ 65. On July 13, 2018, Finley sent plaintiff a final reasonable accommodation letter, informing her that defendant could offer no further accommodations, but that plaintiff should contact EOD if she decided to reconsider their earlier offer. *Id.* ¶ 67.

Smith never accepted OTDA's offer. DSMF ¶ 68. But defendant did not fire plaintiff, either. *Id.* ¶ 69. Instead, plaintiff started a new job with the New York State Office of Victim Services in January of 2019. *Id.* ¶ 70. That same month, plaintiff filed the present complaint. Dkt. No. 1. Plaintiff and defendant then cross-moved for summary judgment on September 23, 2020 and February 1, 2021, respectively. Dkt. Nos. 30; 43.

## III.  LEGAL STANDARD

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

Where, as here, the parties have cross-moved for summary judgment, a reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 246 (N.D.N.Y. 2014) (McAvoy, J.) (citation omitted).  In undertaking this analysis, it bears noting that "a district court is not required to grant judgment as a matter of law for one side or the other." *Id*.

8

## IV.  **DISCUSSION**

Section 504 of the Rehabilitation Act provides that, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any [federally-funded] program or activity." *Dean v. University at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 186 (2d Cir. 2015) (citing 29 U.S.C. § 794(a)).

The Rehabilitation Act took effect prior to the Americans with Disabilities Act ("ADA"), and only applies to programs receiving federal funds.  *Dean*, 80 F.3d at 186.  However, the Rehabilitation Act and the ADA otherwise share the same requirements and are analyzed under the same legal standards.  *Id.* (citing *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009); *see also Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 538 (S.D.N.Y. 2014).

Under the ADA, an employer discriminates on the basis of disability when it fails to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.  42 U.S.C. § 12112(b)(5)(A).

To establish a prima facie case for disability discrimination due to a failure to make reasonable accommodations, the employee must show that: (1) she is a person with a disability within the meaning of the ADA; (2) her employer was on notice of her disability; (3) she could perform the essential functions of her job

either with or without reasonable accommodations; and (4) the employer refused to provide reasonable accommodations. *Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015).

Once the employee establishes a prima facie case, the burden shifts to the employer who must then demonstrate that granting the proposed accommodation would have caused it undue hardship. *Hampson v. State Farm Mut. Auto Ins. Co.*, 2015 WL 12733387, at * 7 (N.D.N.Y. Mar. 26, 2015). However, it is worth noting that "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95 (citing *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995)). Instead, the accommodation need only be effective. *Id.*

Smith alleges that OTDA discriminated against her by refusing to provide an exemption from making telephone contact with the general public, despite the fact that she informed her employer that this task induced migraines. In response, defendant argues that telephone contact with the general public was an essential function of plaintiff's job.

This argument serves two purposes: (1) it shows that Smith could not perform an essential function of her position; and (2) it demonstrates the reasonableness of OTDA's offers of accommodation, since employers have no obligation to offer a reasonable accommodation that eliminates an essential job function. *Id.* (citing *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95 (2d Cir. 2003)). A holding for defendant on either ground would amount to an inability on plaintiff's part to

10

prove an element of her prima facie claim and, thus, demand summary judgment in defendant's favor. *Noll*, 787 F.3d at 94.  Since the second prong of defendant's attack presents a clearer question, the Court will turn to whether plaintiff's demanded accommodations were reasonable, and only reach the question of whether speaking on the telephone with the public was truly an essential function if plaintiff's claim survives.

To carry her burden on the fourth element of whether OTDA refused to afford her reasonable accommodations, Smith must establish that defendant's refusal to accommodate her by eliminating the possibility of her ever speaking to the public on the phone was unreasonable.  For the reasons that follow—and as a matter of law—she cannot.

To illustrate, consider what a reasonable factfinder would need to conclude to return a verdict for Smith.  That factfinder would have to determine that OTDA's offer of extremely limited phone contact with the public was not a reasonable one, simply because it allowed for the possibility that plaintiff might need to speak on the phone with a member of the public at some point.  DSMF ¶ 61.  The factfinder would have to be similarly dissatisfied with defendant's offered accommodations of pre- and post-call rest breaks—not to mention the ability to pass irate or difficult callers off to supervisors—should plaintiff find herself on the phone with a public citizen.  *Id.*

But consider also OTDA's role.  The OAH in particular is engaged in the extremely public-facing business of processing appeals by applicants for state

benefits. DSMF ¶ 2. It was not reasonable for Smith to expect that defendant should have kept her in a role in that branch of its operations while cutting out every avenue of contact to the public despite contacting the public being a primary purpose of the OAH. *Id.*

In short, Smith had one accommodation in mind, and one alone: to have all possibility of public phone calls removed from her employment, no matter how remote that possibility may have been. OTDA's denial of that particular request amounts only to a denial of plaintiff's perfect or chosen accommodation, not to a denial of reasonable accommodations as a whole. The Rehabilitation Act only precludes defendant from the latter, and thus plaintiff's claims fail as a matter of law. *Noll*, 787 F.3d at 95.

In a last-ditch effort to save her Rehabilitation Act claim, Smith points to notes from healthcare practitioners indicating that she "could not be placed on any job duties with the general public," in particular over the phone. Dkt. No. 30-5, pp. 4, 7. Assuming that the Court can even consider this evidence,[3] it still is not enough to sway the analysis in plaintiff's favor.

After all, OTDA does not dispute that speaking with the public over the phone exacerbates Smith's condition; otherwise it would not have offered the accommodations of rest breaks and passing off difficult callers that it did to limit

---

[3] "As a general matter, . . . unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment." *Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005); *see Weiss v. Cty. of Suffolk*, 416 F. Supp. 3d 208, 214 (E.D.N.Y. 2018) (assuming that doctor's notes were admissible while expressing doubt that they were).

the fallout of those interactions.  DSMF ¶ 61.  All that defendant is saying is that it could not have reasonably been expected to completely cut out every possibility of plaintiff interacting with the public given the nature of OAH's work. DSMF ¶ 2; Dkt. No. 30-5, p. 7.  Defendant is correct.  Accordingly, plaintiff's claim must be dismissed.  *See, e.g.*, *Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804, 810 (11th Cir. 2020) (summary order) (noting that customer service representative's request to be exempt from answering calls was not reasonable).[4]

## V.   **CONCLUSION**

The Court finds that Smith has failed to establish a prima facie case of disability discrimination under the Rehabilitation Act for failure to provide reasonable accommodation.

Therefore, it is

ORDERED THAT

1.  Plaintiff Shaakima Smith's motion for summary judgment is DENIED;

2.  Defendant New York State Office of Temporary and Disability Assistance's cross-motion for summary judgment is GRANTED; and

3.  Plaintiff Shaakima Smith's complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment accordingly and close the case file.

---

[4] Because plaintiff has failed to produce a triable issue of fact on her behalf, she cannot prove that summary judgment in her favor is appropriate.  Plaintiff's cross-motion for summary judgment must be denied.

IT IS SO ORDERED.


Dated:  April 22, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge

14